Case number 1 4 1 9 1 6 Stephen John v. William Farnsworth et al. Or arguments not to exceed 15 minutes per side. Council Mark, haifully for the appellant. If you have already reserved any rebuttal time please tell me when you come up to the podium. Yes your honor I've reserved three minutes of rebuttal time. Very well please proceed. My name is Mark Haifley I represent the plaintiff in this matter Stephen John and we're appealing as the court knows a summary judgment in this case and our case is based primarily on the fact that we feel that there was a violation of procedural due process in this case and in the Goss case the court said that for procedural due process the procedures have to be fundamentally fair and in this case there was some factual evidence from Jake John my client that they had a videotape of Jake taking this laptop computer and that wasn't that wasn't factual they did not have a videotape of him taking the laptop computer they had a video of him walking down the hall with a backpack on his back but when they looked at the facts surrounding the time the video was taken he was in the area wasn't it reasonable for them to deduce from those facts that he took the the laptop and if they made that deduction if they drew that inference then is that statement that we have a tape of you taking the videotape is that patently false? Well what they it's not it it is false because they told him that they had a laptop and they really didn't have a video of him taking the laptop they had a video of him walking down the hall with a backpack on his back. I thought what they told them is that they had videotapes of the cameras that monitor the hall. No. So how do we know exactly what they told him about the content of these videos assuming that that's relevant to your claim given the unfortunate suicide of your client? Well we know that the principal testified that he told them that the video was not available. I understand your argument about how you claim his due process rights were violated. Yes. Because they had a video and that they wouldn't show him the video I got that so we'll put that off to the side a second. You're claiming in this discussion that they violated his rights by essentially misrepresenting or lying what was on the video which is a related but a separate claim. Yes that's what we're claiming. So where is the evidence that they told him they had evidence in a video of him stealing the laptop? Well the superintendent said he testified that it he was told it was his understanding that Jake was told that there was a video of him in possession of the laptop. So now we're now we're three steps away the superintendent is told was told by somebody else as to what was said at this meeting with the student and then that's repeated now to the authorities? Well the superintendent said that. So what the superintendent says unless you're claiming it's some sort of an admission it's complete hearsay. Yeah it's an admission it's an admission by a party opponent. And so who does he say said that to him? The principal. All right and what does the principal say he said? The principal says I told Jake that we had a video of him taking the laptop. Okay so you say the record corroborates that that they told him taking the laptop right? Yes. You're sure about that? I believe that's what it says. So let's assume that that's the case. Let's assume intentionally or otherwise they lied to him. Okay. I think that the interesting one interesting aspect of this case is that is to compare what you're claiming Goss says is a due process right that a student gets in what will you admit is a is a more abbreviated type of a proceeding and connection with a school discipline than would occur if it was an Yes it's more abbreviated. Now is there any limitation correctly or incorrectly on the police in actually lying to somebody when they talk to them about whether they've committed a crime? Yes there are limitations on that yes. Really what limitations are those? Well I say that the police don't have a duty to be Well I think in this case you're dealing with a minor. We're talking here about comparing it to the due process rights that somebody commit has committed a crime and is being charged in court with committing a crime and their liberty could be deprived for up to life. Do you agree or disagree in either way that the police can lie to somebody? Well if they if the confession is involuntary if it I'm not talking about anybody's will being overborn I'm saying do police have a duty to show somebody the evidence that they had number one. Police. I don't believe they do. Now can they lie about what evidence that they have that they don't show to somebody? I believe they can as long as it's not involuntary. Right so the irony of this, it's taking a long time to get here, the irony of this is that what you're claiming is that in an abbreviated meeting between a student and the school administrators that that student actually gets more due process rights than does an adult who's charged with a serious felony that could deprive them of their liberty for life in a criminal proceeding. That's where your yes it does. So how do we get that out of gas that recognizes that in a school disciplinary sense to avoid turning any encounter between a school administrator or principal and a student into a full-blown due process hearing that things are different. You have some rights but not of your full panoply of due process rights if you're a student. Well the court said in the CY case which was decided last year by this panel or this court that the student has a right to disclosure of the evidence and also in the Newsom case. At the hearing that can lead to the expulsion, not in the first encounter about hey we think you did it, did you do it. This was the only hearing, this was the only hearing that was going to take place, this was it. In the case you're relying upon or this case. But that's because of the unfortunate tragedy that happened following this initial encounter. This was the ten this is the ten day or less meeting between the school and the student. No this this was it and they went back Mr. and Mrs. John to talk to Mr. Valco which they were required to do under the procedures and they said what can we do about this and he said nothing. He's done. He's done and and Mrs. John said just like that and Mr. Valco said just like that. So that's it. That's the end of the procedures. But isn't the reason that there were no more procedures I mean we've alluded to Jake's tragic death later in the day but but actually Jeff Jake confessed almost immediately having been told that well we've got a videotape showing you taking the computer and he said can I see it and they said it's not available and it was available. I guess my point is however you talk about you know other procedural rights that Jake may or may not have had but and it didn't doesn't   Jake didn't Jake or any for instance someone accused sort of cut off the procedural you know parade once they confess. I mean that's it right. I don't agree with that because the court has said for instance in the seal case that the student has a right to the hearing on the discipline involved. Really the problem with this case was the discipline. This was an all-a student an exemplary student. He should not have been suspended for the remainder of the school year. You know in reading your argument I understood you to say part of the problem was that Jake was denied a hearing in accordance with the procedures of the school. Now I know that the school says yes he had a due process when they called hearing when they called him down to the office and they conferred him with the evidence their summary of the evidence that was the say I just said part of your complaint to me was that he never had the hearing in accordance with the school procedure that they called him down and sort of an investigative procedure and then imposed discipline at that time. Am I misreading your argument? Well here's my argument this is not a Gauss case okay because he was suspended for greater than 10 days. I mean it's all over the record that he was suspended for the remainder of the school year. But you are conceding that he had a hearing? He had a Gauss type hearing if this was a short-term suspension right for less than 10 days there would not be a violation. Are you conceding that he had the hearing that would have been mandated for a longer? No absolutely not. Okay. He didn't have a right to call witnesses. He didn't have a right to prepare. He didn't have any notice. He didn't have anything and and he had a right to go to the school board and the impose this type of discipline on an all-a student and he had a right to that hearing. We have we have no way of knowing what would have happened once the student or the parents got the letter that the computer generated after this initial incident whatever you want to call it because by then it was moot. It was moot because Mr. Valco when they went to Mr. Valco in accordance with the parents they that they're trying to find out what to do. At any point did they ask it's almost silly to ask these questions because of the tragic end of this that that evening but where is the evidence that says had they called you as they ultimately did and said Jesus can't be let's assume he hadn't committed suicide you would have looked at the code and you would have said they have a right to a hearing before the school board and you would have demanded that right? Well I would have said you should go talk to the assistant principal. And let's assume the same thing happened two days later three days later they talked to the assistant principal and they said I don't care what the code of discipline says he's done don't even talk to me about it. That doesn't mean it's over. He still had a right they still had to assert their right to go to the school board. I think they had a right I think they had a lie on what the assistant principal said. These people and how were they to be blunt about this and I'm sorry to have to do this but how were they harmed by what they were told by that's administrator that afternoon when they went back even if it was completely in error. Here's how they were harmed. They went there to see if they could do anything about Jake being suspended. They were told no he's done. Just like that it's over. If they had been told that there was anything they could do if they said you know you have a right to an appeal you can go before the school board they would have gone home and said Jake it's not so bad we have a right to a hearing you have a right you know you have some rights here you can go before the school board and you can present your record of all A's in 18 years. So the due process violation really in your estimation then comes down to them allegedly telling the student and the father that it's over there's nothing more that can be done. Yes that's a huge part of the due process violation. I got it. Go ahead. Because the suicide would have never occurred. Well in your written papers you argued that it wasn't just an suspension it was an expulsion. In your argument today you you've consistently said that it was a suspension. Does it make a difference whether it was characterized as a suspension or an expulsion? Yes it makes a difference. What I think it was was a suspension for the remainder of the school year because that's what they said in about five or six different statements. That triggers if it's longer than 10 days under Newsom and under Goss there have to be added protections if it's longer than 10 days and it was longer than 10 days. So he needed he needed to have a hearing before the school district on the punishment and it would have been reduced because it my expert witness testified this is not appropriate punishment this is excessive this is this is not reasonable. One other question and I know your light is on but in your papers you also ascribed to the school officials what I characterize as a higher duty or some some knowledge some foreseeability because Jake broke down when this punishment of whatever was being exacted and you said that that should have put the school on notice to do something more to send him to counseling just address that a little bit for me. Okay they have two policies they the policies say when there's a danger of suicide a and all these procedures need to take place. That's what happened here there was a danger of suicide that's why Mr. Valco said you better keep an eye on that boy. Why would he say that you better keep an eye on him. Why? Because he might hurt himself. Was there any indication in the record that he had earlier spoke about suicide was there any anything that the school put the school on notice that he might have been that he might have had suicidal ideations? Yes the fact that he broke down and Mr. Valco realized it and told Mr. John you better keep an eye on that boy so that is evidence I mean these are fact questions this judge ruled as a matter of law you know that there was Mr. Valco knew nothing well then why did he tell him to keep an eye on that boy why didn't he get him? You've answered the question. Okay. Thank you. Morning your honors Ken Chaffee appearing on behalf of the defendants. I believe that the students procedural due process rights were properly observed in this circumstance and regardless of what this ultimate punishment was the only admissible evidence we have in this case regarding what occurred during the initial meeting with Jake and the two school administrators comes from Farnsworth and Valco. We know one that the administrators contacted legal counsel that morning to find out how to proceed with the due process hearing. Two and they were told to get the police involved. Yes and the school district acted as what they thought was in the best interest of the student they did not want to get the student wrapped up in the criminal justice system. But they also didn't notify his parents at that time they didn't have his parents present at the time they engaged in the initial queries it was just a student. Correct but that's not required a procedural due process in a student discipline setting. What is required is generally speaking notice of the charges and if he denies them an explanation of the evidence against him and that was exactly what was provided here. When Jake was brought down to the very serious offense this isn't taking bubblegum from a student this is a teacher's computer containing confidential information and test grades and assignments and things like that. The undisputed evidence is that he was explained the due process procedure by Farnsworth then they gave him a notice of the charges against him. The evidence was explained and despite what Mr. Haefeli says was explained there's no evidence of what he says was explained. Farnsworth testified that they said they had a video of well he testified I want to stop right there for a moment because I understand the case all says that there is a duty to explain the evidence. Is there a higher duty invoked when the student asked to see the evidence because here Jake asked the the officials to see the evidence and they said not that we're not going to it to you they said we don't we don't have it. Well what I yes I mean I can address in two ways first factually the hearing took place in Mr. Farnsworth's office and I have a citation for that if you need a citation to the record but the computer with the video on it was in Mr. Valcoe's office so it's a factually accurate statement and Mr. Valcoe testified it was on it's at 255 and page 22 and 23 of his deposition that he offered to get the video for Jake and it basically called his bluff and he said that's okay it was almost as if Jake conceded well they got me here but secondly legally no he doesn't have a right to see the evidence against him he has a right to an explanation of the evidence against him nothing was withheld and this was a case Mr. Haefeli brought it up the CY case Judge McKeague you were on that panel that was the case that I was defending in that case there was actual written evidence against the student and in the opinion it states that inconsistent with Newsome you don't have a right to it evidence itself you have a right to an explanation of the evidence that's exactly what was provided in that case the student didn't have the right to the physical evidence just an explanation evidence and in Newsome itself it says in italicis an explanation of the evidence as opposed to the evidence itself when the first argument that Mr. Haefeli is making it is that they lied to him about what the video actually showed so we can look at that it seems to me a couple different ways I'd like you to react to one is is there evidence they actually lied to him about what the video showed but even assuming they did is there anything that says that a school administrator can't dissemble as to what they what evidence they have at this initial meeting with a student we're not talking about the due process hearing that they get at the end for an expulsion talking about this initial meeting no there to address the evidence that Mr. Farnsworth lied about the evidence showing on the video Mr. Haefeli says that the record evidence shows that they told them they have video of him taking the laptop well what Mr. Farnsworth testified to is the evidence that we had was video of every single student leaving the area in the time stamp when the computer was woken up jiggled on the desk within about 20 to 30 seconds Jake walked out that was the video that was the evidence that we had so I explained that to Jake there's nothing in there that says I saw him take the computer or the video shows him take the computer but we don't know what Jake would say about what they about what he was told so at some point did one of the administrators explain to the parents what they told Jake about what the video shows in different language than what you just read to us that I'm not aware of this is the record that's it as far as you know this is it as far as I know about what occurred during this hearing to the second point no there is no law that requires the school district to accurately describe evidence to a student during a due process hearing all that's required is they not withhold any evidence that they're relying on and there was nothing withheld in this case and judge McKee you brought the perfect analogy here is look at the custodial interrogation setting in a police department those individuals have greater due process rights and there is no right to have a police officer accurately describe evidence against them actually it happens all the time we cited a couple of those cases in our brief here where they say trickery alone will not overcome someone and in that context I believe the law is that even if the police dissemble as long as a confession resulting from this interview is voluntarily knowing then it's admissible correct true there's nothing more that could be accomplished by continuing a further hearing after his confession takes place Mr. Valco also testified on page 69 of his deposition and in his statement that he acknowledged during his deposition which I believe is record entry 334-36-15 that before he admitted his guilt he explained the potential consequences for it in case he was guilty told him they would be I can grab it real quick consequences would be lengthy suspension and removal from all extracurricular activities and that was explained before his confession there's nothing more that could be accomplished by continuing a hearing okay I understand that you argue that Mr. Farnsworth and Mr. Valco did not make false statements that they complied with their obligations under the law be it Gaust, Newsom or whomever but let's assume I mean if you assume hypothetically that they did make false statements during the questioning whether it was about the content of the video or the value of the computer or the consequences of the action if you assume that and if you assume as the told him you know you're going to be expelled we're going to contact University of Michigan you're never going to get in you're going to have a criminal record a felony record and you're never going to be able to get the job of your choice if you assume that they told these things to the 16 or 17 year old student would those kind of statements be the kind of statements that one could appropriately consider would likely create a danger of suicide and hence invoke the state created danger doctrine no I do not believe they would and for a number of reasons the state created danger doctrine the legal standard there is a demanding standard actually he has to the plaintiff has to show an affirmative act that creates or increases the risk of a known danger now the court has described that is a egregious conduct so egregious that it would shock the conscious now when you look at it not only that the actor the state would have to know that their actions or should know that their actions would result in an obvious risk of danger in this case it would say that the administrators knew that what they were going to do could possibly result in suicide I don't think anyone can say that making statements in this you're talking about a 17 nearly 18 year old student who is highly intelligent from all accounts a good smart student seemingly well-adjusted from what the school administrators knew no history of mental illness and no history as far as they knew of suicidal ideations this was like I said a seemingly well-adjusted individual now making statements like we're gonna contact police if you don't admit your guilt that's just a statement of fact that's not a threat because what they have to do if you're not going to admit it we have to we have to find out what happened here we have to find out who stole the computer this is a serious offense we have a duty and obligation to the student body and the community to maintain order in the school district so making those kinds of statements are not such egregious conduct that it would rise to the level that you should know that a person would commit suicide after hearing those words now I want to take you back from the state created danger to just finish up on due process for a second the other argument that mr. Halfley is making is that by the parents being told after they return to the school with a laptop that it's over nothing more can be done that that then prevented them from going back and telling their son that that that at least as to the discipline it isn't over and there are further steps that can be taken so what what does the record show that that happened after he confessed and he and his dad brought the laptop back to the school well the record shows that after he confessed and brought the laptop back to the school there was a second hearing that day with the dad present and Jake Jake continued knowing what the punishment was going to be to say I had the computer I had the computer that's what the dad testified to that hearing continued for 35 to 45 minutes I believe is what the dad estimated the length of that hearing to be later that day what what I want to know is is there record evidence that corroborates what mr. Hafele is saying here this morning that they were told it's over this is what's going to happen there's no further appeal you can't go to the school board whatever whatever it is I can't think of a citation to that off the top of my head your honor and it assuming for the sake of argument that one of the parents had testified to something like that I know that the mrs. John had signed an acknowledgement at the beginning of the school year that outlined their procedural due process rights acknowledging that she had received it this was something that was outlined in the student handbook that they had and possessed and acknowledged reviewing so even if mr. Valco made such a statement like that it didn't extinguish their rights they could have still gone before the school board of education they could have talked to the principal which they did not do they could have talked to the superintendent which they did not do it does not end as I understand mr. Hafele's argument which seems to sort of evolve here it doesn't really go so much to whether they ultimately could have gone back to the school board which obviously events eliminated the need for that but it goes to the question of whether there was a due process violation in somebody misinforming Jake and his parents at the time of what you're describing as the second hearing as to whether there were any further rights so it seems to me there are two questions were did they misinform them number one and if if that if the answer to that is yes or if it's a fact question then does it matter here from a due process standpoint given what the code of the student handbook says what I believe to be the case I think he's talking about the third time that they spoke with school personnel that day which would have been in the afternoon around two o'clock the first hearing was at ten eleven o'clock then around noon and then again at two o'clock I'm sorry can you repeat part of your question sure question is what is the record show that they that the what would happen next or not happen next as the case may be I believe that mr. Hefeli's brief does state that the parents stated Valco told them that they weren't entitled to a further due process they were or were not I think that's what he claims in his appeal that they were not right so your folks say that they didn't say that but that's a fact question obviously yes so if we take the record in the light most favorable to them and assume that they were told that is that a due process violation no it's not your honor and why not it's been explained multiple times that you do not have a student does not have a due process right to an appeal of your suspension it's just not a established right not only that though they were informed I mean there is no question about this they were informed at the beginning of the school year what their due process rights were the statement that was sent prepared and to the family pulled the wrong citation but there was a statement that was prepared from the zangle discipline record that was being sent to the family identifying what the punishment was or the charge was in the punishment it informed them of their due process rights did that actually go out even I know he'd committed suicide in the meantime I don't know if it was actually sent I know it was generated that day though but the record shows that it was generated yes that's from Patricia Spielberg's testimony so even had they been misinformed that would have been presumably corrected by virtue of what they received in the mail it would have been corrected by that and it would have been corrected by simply reviewing the student handbook that they acknowledged receiving but I thought you said that they had no right to appeal the suspension they don't have it they don't have a procedural due process right to appeal the suspension but but that's where it gets confusing I thought if it was longer than 10 days then they would have that right so I thought that your position had been this initial suspension whether it's in this first hearing second hearing or third meeting that all occurred in the same day was that it that was a 10-day or less suspension and they were recommending to the superintendent that it be longer that is yeah that is my argument your honor so assuming that what you're arguing is correct that that it was within the goss parameters and let's assume you don't get an appeal from that it was they were gonna take the next step to fulfill what they told the parents and the students they were that he can't come back to school for the rest of the year but he can take classes from home yes it was gonna he was gonna continue his education he would have had over that you get a hearing don't you he would have been granted to hearing from the school yes okay but but but the but the administrators didn't tell Jake that you're suspended for 10 days and we're going to recommend a longer suspension they said basically you're out and they were suspending him for you know 10 days or less but we're going to recommend these other things everything that he was told and that the parents was told is that he was being suspended for the rest of the school year that was not this demarcation in what was communicated to either the student or the parents correct well I don't know if that is correct your honor I think that mr. it was either mr. Farnsworth or mr. Valco said that they explained the suspension being we're going to issue an initial suspension and make a it was issued all of that all of those explanations occurred after the suicide I don't I think that one of the one of the two administrators testified that that's what occurred that discussion occurred in the initial well I mean but but obviously any contact with the parents after the suicide was there I thought the parents said they didn't want to talk to the school correct no and what I'm saying is that the characterization of what was said all after the suicide we don't know what was actually said I mean we're assuming and we're giving the school administrators the benefit of the doubt in what they said at that time but we really don't know well we all we know is what mr. Farnsworth had testified to and I believe it's on page 7 or 8 of his deposition that he told Jake during that initial hearing what the suspension would be and that he would make a recommendation that he be suspended for remainder of the school year I believe that is what the undisputed testimony is well that's why we're trying to figure out whether that whether there is record evidence that the parents claimed they were told something else in these subsequent meetings that same day but the record will speak for itself all right thank you thank you thank you honors all right mr. Feli you've got your three minutes all right I'd like to try to answer some of your questions better than I did before you asked whether there was any evidence of what mr. Velko told them the Johns in their meeting when they came back to find out if anything could be done and there is mrs. John testified and this is on page 24 of my brief she said and then I asked mr. Velko and I said you know after 12 years of stellar school career and you're telling me it's over just like that and he said yes just like that and then and that's the last I remember we left there and then she testified what else was discussed with mr. Velko nothing just that Jake was done and that was the end of the conversation I mean we were just trying to wrap our heads around what was happening I don't recall anything specifically mostly you know I I didn't understand how he could just be done like that so they were they were told he was done there was nothing else that they could do so that's anything in the record that refutes the school board's claim that he the parents would have gotten the notice that is called for in the Marysville student code of conduct that explains what happens next they never got it I I I don't you know they barely it's a computer generate well they've changed their story three times as to what actually happened you know at first they said all over the documents it says he's suspended for the remainder of the school year then they issue a document that says it's an effort indefinite suspension and then they at the depositions they've changed to this well it was a short-term suspension for ten days and a I don't know what this what document they were gonna burden of proof I'm just asking okay what the record shows I'm not aware of them receiving anything other than mr. Valco he had a parent and actual authority to tell them what their rights are they're not going to go back and read handbooks their son just got counsel let me ask you this or is it your contention then that let's say Valco said that you know but but that can't change the school policy Valco was without authority to on the spot change the written school policy which Jake and his mother had acknowledged earlier in the year and I mean I guess perhaps I'm overly sensitive this for instance a district judge in a criminal proceeding misstates a defendant's procedural rights on the record you know I mean is that in and of itself a violation the defendant's due process I mean there there are there's another another level in this case it's a court of appeals in this in that case was a school board I mean Val whatever Valco may have said if it's inconsistent with the written policy it's a nullity right ok first of all it's not inconsistent with the written policy the written policy says go to the assistant principal ask him what your rights are that's what they did he told them they followed the written policy what the that's not what the policy says well it says something like that it says the assistant principal sends written notice to the violation the consequences and the perp then the appeal procedures and then the parents decide whether they want to actually exercise their appeal rights all right well the assistant principal is the correct person to go to and that's where they went I mean they're not reading policy manuals they're they just learned that their son after 18 years of stellar performance was suspended for the remainder of the school year so they wanted to know what could be done what I'm trying to separate this out is is I understand your claim that if they were misinformed that that's part of your created danger theory I got that so put that off to the side yeah ignoring the state created danger theory that you have for a moment I'm trying to figure out what the due process violation was in these various meetings other than the video question and I'm trying to figure out what the source of the authority is to say that that's a due process violation the due process violation other than it was not fundamentally fair is that there was a suspension for longer than 10 days and under Newsom when there's a suspension for longer than 10 days there has to be additional protections there has to be a right it's not clearly defined but there's more than just this preliminary hearing and so we don't know whether that would or wouldn't have happened in practice because of the tragedy that occurred here so we have to figure out whether being misinformed about that was a due process violation and what's the source let's assume that they were misinformed and they were told something contrary to this code of conduct what's the source of your authority to say that being misinformed about the appeal rights was in fact a due process violation well I the man that tells you what's going to happen apparently it says in writing and not orally and they went to him and he told him what was going to happen then he's got actual and apparent authority to make that ruling I mean they're entitled to rely on the school board's policy you're saying that he has actual authority at that juncture to change the school board's policy as far as they're concerned it says in the in the in the handbook he's the one that tells them what to do and you know they would have called Jake and if he would have told him you know you have a if he would have said mr. mrs. John you know what you have a right to appeal this you have a right to a hearing before the school board they would have called Jake up and said Jake it's all's not lost you know you got a hearing you got a right to present witnesses the school board will never continue this because it's not fair but sometimes you can't go back and undo things and and he that's that was his decision he said no he's done and you know they ran that school that's how they ran it all right thank you interesting case from a procedural standpoint but obviously a tragic case we'll take this under advisement and consider your arguments very carefully thank you